UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDRA MCLEOD,

       Plaintiff,                      Case No. 2:16-cv-247

v.                                         HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

In September of 2012, plaintiff Sandra McLeod filed an application for disability and supplemental security income insurance benefits. See Transcript of Administrative Hearing. (ECF No. 7, PageID.262-263). Plaintiff alleges that she became disabled on January 6, 2011, due to degenerative disc disease, plantar fasciitis, chronic muscle spasms, chronic headaches, heightened nerve sensitivity, numbness and tingling in hands and feet, widespread pain, dizzy spells, blurry vision, and sleep disturbances causing fatigue. (ECF No. 7-6, PageID.293). Plaintiff's application was denied initially and plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ).

ALJ Brent C. Bedwell, held a hearing on October 1, 2014 (ECF No. 7-2, PageID127-158). Plaintiff was represented by counsel at the hearing. Plaintiff and vocational expert John R. Reiser testified. Plaintiff was born on April 15, 1967, and has a high school education. (ECF No. 7-2, PageID.131). Plaintiff lives with her husband and stepson. She has a driver's license. Plaintiff has past work experience as a casino blackjack dealer between 1996 and

2001. (PageID.132). She also worked as a valet and bell attendant. She worked until 2007, at which time she ceased working due to her disability. (PageID.133).

Plaintiff explained that she is in chronic pain every day. When she washes dishes her hands cramp, when she sweeps her back spasms, when she walks her hips burn, and she has cysts in the arches of her feet. (PageID.133). The more active she becomes, the more she hurts. (PageID.134). She takes Norco for pain, Topamax for nerve pain, Baclofen for muscle spasms, Prilosec for her ulcer, Claritin for allergies, Remeron for depression, and Ventolin for asthma.

Plaintiff was examined by neurologist Dr. Coccia who informed her that she did not need surgery on either her back or neck. (PageID.135). When Dr. Coccia "crammed his hand into [her] hip" she screamed and started to cry. Dr. Coccia asked if she had been diagnosed with having fibromyalgia. After poking her in the back, which caused her pain, Dr. Coccia informed her that he thought she had fibromyalgia. (PageID.136). Plaintiff has had some success with epidurals and nerve blocks. (PageID.137). Dr. Alshab cauterized the nerves in the bottom of her back and told her that she had arachnoiditis, which she believes will eventually cripple her.

Plaintiff explains that the pain never goes away and that her daily activities are limited. Plaintiff can watch television sitting-up until her back locks and then she needs to lay-down. She does Sudoko puzzles and spends time with her pet ferret and dog. (PageID.138). Plaintiff stated that she could sit for about one hour and stand for about one half hour to one hour before needing to get up and move. (PageID.140). The cysts in her feet cause her pain from standing up for too long. Plaintiff experiences hip pain from walking and needs to stop after about one and a half blocks. (PageID.141). Plaintiff can lift up to ten pounds on a good day.

Plaintiff takes Remeron for depression, but does not see a mental health professional. (PageID.142). She stated that without Remeron she would cry all the time, so she

thinks that it helps. She does not engage in recommended physical therapy exercises, but just tries to do her daily activities of keeping the house clean. Plaintiff states that she has difficulty sleeping. Plaintiff goes to sleep about 5:00 to 6:00 am and sleeps until 2:00 to 3:00 pm in the afternoon. (PageID.144).

The vocational expert testified that a hypothetical individual plaintiff's age, educational background, and work experience, who is limited to unskilled sedentary work that allows a change in position every 30 minutes, without needing to climb ladders, ropes, or scaffolds, limited to occasional climbing of ramps, stairs, stooping, crouching, kneeling, and crawling, avoiding exposure to unprotected heights, and hazardous moving machinery, and who is off task up to ten percent of the time in addition to regular breaks could not perform plaintiff's past work because none of those positions were sedentary. (PageID149-151). That person could find work such as seated assembly production work (1,500 jobs in Michigan and 23,000-24,000 jobs nationally), information clerk or appointment clerk (2,000 jobs in Michigan and 70,000 jobs nationally), and office clerk (2,700 jobs in Michigan and 89,000 jobs nationally). The vocational expert opined that anyone who is off task more than ten percent of the work day would be unable to work. (PageID.153).

The ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy given plaintiff's residual functional capacity (RFC) and therefore concluded that plaintiff was not under a "disability" under the Social Security Act (20 C.F.R. § 404.1520(g)). The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying her request for disability benefits. Plaintiff filed this action pro se.[1]

---

[1] Both parties consented to proceed before a Magistrate Judge on January 18, 2017.

"[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines plaintiff is or is not disabled under a step, the analysis ceases and plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.* The ALJ determined that

plaintiff was not engaged in substantial gainful activity since her January 6, 2011, alleged onset date, and plaintiff had the severe impairments of degenerative disc disease, planter fasciitis, obesity, residuals of left foot surgery, a mood disorder, depression, and an anxiety disorder. The ALJ noted that plaintiff had non-severe impairments of gastro esophageal reflux disease and irritable bowel syndrome. In addition, although plaintiff alleged she suffers with fibromyalgia, the ALJ found that without a definitive diagnosis of fibromyalgia it was a non-medically determinable impairment. The ALJ considered plaintiff's claims of "diffuse body pain" allegedly caused by fibromyalgia. The ALJ found that plaintiffs' impairments did not meet or medically equal the severity of one of the listed impairments in 20 C. F. R. part 404, Subpart P, Appendix 1. The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform sedentary work with additional limitations of: alternating between sitting and standing every thirty minutes, being off task ten percent of the time, avoiding exposure to heights, hazards and the use of moving machinery, not climbing ladders, ropes and scaffolds, and allowing only occasional stooping, crouching, kneeling, crawling and climbing of ramps and stairs. The ALJ found that plaintiff could perform unskilled sedentary jobs in the national economy such as production worker (23,000 jobs), information clerk (70,000 jobs), and general office clerk (89,000 jobs). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if the evidence supports an alternative conclusion.

Plaintiff argues that the ALJ erred by not finding a definitive diagnosis of fibromyalgia in the medical records, by failing to conclude that her foot disorder met listing 1.02(A) and that her back disorder met listing 1.04, by failing to make appropriate findings of credibility, and by failing to conclude that the 2013 mental status examination showed debilitating mental limitations or that the medical records supported plaintiff's allegations of disabling

symptoms. Plaintiff further alleges that the ALJ failed in concluding that she had diminished strength (4/5) in her lower extremities, but that her sensation and range of motion were intact.

Plaintiff argues that the ALJ failed to conclude that she suffers with a disabling mental condition because on occasion doctors have noted that she is dysphoric. The ALJ fully considered plaintiff's mental impairments when considering her ability to function daily. The ALJ stated:

> The claimant testified she was not seeing a doctor for her depression. However, she has medication that she stated was helpful with her symptoms.
>
> In activities of daily living, the claimant has mild restriction. The claimant uses a pill organizer to remember her medications (Exhibit B3E-3). She is able to prepare simple meals and perform basic household chores (Exhibit B3E-3). The claimant testified she manages about the same range of activities today. The claimant is able to drive a car and go shopping (Exhibit B3E-4). Although the claimant reported difficulties keeping her checkbook balanced, she is able to pay bills and count change (Exhibit B3E-4). The claimant reported having difficulties managing her personal hygiene, but the medical records describe good hygiene (Exhibits B3E-2, Bl0F-9 and Testimony).
>
> In social functioning, the claimant has mild difficulties. The claimant reported that she does not have difficulties getting along with others (Exhibit B3E-6). She gets along with authority figures and she has never lost a job because of problems getting along with other people (Exhibit B3E- 7). The claimant keeps in contact with her family and friends, but she does not go out and socialize on a regular basis (Exhibit B3E-5). The claimant reported that her physical pain is the main reason she does not like to go out (Exhibit B3E-5).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported having memory problems and difficulties sustaining concentration (Exhibit B3E-6). The claimant reported being able to follow written instructions, but having some difficulty remembering spoken ones (Exhibit B3E-6). As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The claimant has not been hospitalized due to mental health issues.

6

> The medical records have not documented deterioration in adaptive functioning caused by mental health symptoms.

(PageID.115-117). There exists substantial evidence to support the ALJ's decision that plaintiff does not suffer from a disabling mental condition.

Plaintiff argues that there exists a general consensus in the medical records that she suffers with fibromyalgia. Plaintiff asserts that fibromyalgia appears in a number of her medical records. In a June 8, 2010, progress note, Dr. Aldridge wrote that plaintiff presented with subjective complaints that included "chronic pain superimposed with fibromyalgia." (PageID.352). Plaintiff's Neurontin prescription was increased to 200mg three times per day to address the fibromyalgia pain. On October 13, 2010, Plaintiff was seen for a check-up regarding her fibromyalgia complaints. (PageID.346). At that time, her prescription for Neurontin was discontinued despite the success in pain improvement because it caused continuous weight gain. Plaintiff was intermittently using Robaxin and Flexeril and her chronic pain issues were to be the subject of a one month follow-up appointment.

In 2012, plaintiff visited the Upper Peninsula Pain Institute at War Memorial Hospital on several occasions for pain treatment. Plaintiff presented with low back pain, neck pain, and shoulder pain. Plaintiff was diagnosed with lumbar/thoracic radicultis, lumber post laminectomy, and fibromyalgia/myositis and was treated with epidural steroid and trigger point injections. (ECF No. 7-7, PageID.395-435).

Documents from War Memorial Hospital, dated June 13, 2013, indicate that plaintiff complained of chronic pain and was to be evaluated for fibromyalgia. (PageID.490). On October 3, 2013, it was noted that plaintiff has a psychological history of fibromyalgia and assessed with chronic pain that needed to be managed. (PageID.492). Fibromyalgia was noted in the assessment treatment plans on January 24, 2014, and on September 23, 2014. (PageID.482,

7

497). In addition, plaintiff points to the Disability Determination Explanation that concluded that she was not disabled as evidence that she had been diagnosed with fibromyalgia due to the listing under impairment diagnosis. (ECF No. 7-3, PageID.168, 183). The State Agency concluded, as did the ALJ, that despite plaintiff's limitations she maintained the residual functional capacity for work.

> Specifically concerning the fibromyalgia the ALJ found that:
>
> The alleged fibromyalgia is a non-medically determinable impairment. A medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms (20 CFR 404.1508, 404.1529, 416.908, and 416 .929, and SSR 96-4p and 96-7p). There must be evidence from an "acceptable medical source" in order to establish the existence of a medically determinable impairment (20 CFR 404.1513(a), 416.913(a), and SSR 06-03p) that can reasonably be expected to produce the symptom(s). There has not been a definitive diagnosis of fibromyalgia in the records. At the hearing, the claimant testified that her doctors suspect that she has the impairment, but it has not been diagnosed. The claimant's complaints of diffuse body pain have been considered when the undersigned reached findings herein. Although Fibromyalgia is a non-medically determinable impairment the claimant's complaints of pain have been considered and are discussed below.

(ECF No. 7-2, PageID115). Plaintiff concedes in her response brief that although "fibromyalgia has been considered and discussed, for years, in my medical record, there does not appear to be a clear and definitive diagnosis, per se, but moreover a consensus by several medical experts." (ECF No. 14, PageID.535). The ALJ considered plaintiff's complaints of pain in determining that she had the residual functional capacity for sedentary work. The issue is not whether plaintiff was diagnosed specifically with fibromyalgia, but whether the ALJ properly considered the medical evidence and testimony from plaintiff regarding her pain and symptoms in reaching his conclusion that she could perform sedentary work.

8

In *Warner*, 375 F.3d at 392, the Sixth Circuit concluded that it was appropriate for the ALJ to discount the claimant's credibility as to disabling pain based upon the plaintiff's capacity to engage in household and social activities.

> The record reflects that although Warner alleged disabling pain, he also testified, consistent with the objective medical evidence, that he could manage his personal hygiene, pick a coin off a table, vacuum, drive short distances, and wash spoons and forks. The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.

*Id*, (citing *Walters*, 127 F3d at 532 (6th Cir. 1997)). In *Wyatt v. Secretary of Health and Human Servs.,* 974 F.2d 680, 686 (6th Cir. 1992), the Sixth Circuit concluded that where the pain was not established by objective medical evidence, or was relieved by pain medication and the plaintiff could engage in typical household chores such as shopping and carrying bags, dishwashing, cooking, sweeping, and driving, the conclusion that the pain was not so disabling to prevent the plaintiff from engaging in sedentary work was supported in the record.

> In this case, the ALJ concluded that:
>
> The allegations of disabling pain are not entirely credible. The alleged onset date is three days after a prior Administrative Law Judge (ALJ) decision (Exhibit B5A-12). At that time, the ALJ limited the claimant to a range of sedentary work (Exhibit B5A-8). The claimant has complained of blurry vision and dizzy spells, but neurological examinations of the claimant have been unremarkable (Exhibit B12F). The medical records, including the September 2012 MRI scan reveal some deterioration of the claimant's back condition, and the undersigned added limitations in the RFC finding to accommodate the deterioration. While the claimant has complained of chronic pain, physical examinations of the claimant have showed that her condition has remained stable (Exhibits B6F-1, Bl0F-10). The claimant's back pain has been treated conservatively and a neurosurgeon in April 2013 recommended against any type of surgical intervention (Exhibit B12F). Despite the claimant's complaints of pain, the claimant has maintained the ability to prepare meals, perform basic household chores and go shopping (Exhibit B5E-3, 4 and Testimony). At the hearing, the claimant testified that she could sit for up to one hour at a time and stand for

> thirty to sixty minutes. The claimant also testified that she could lift up to ten pounds. The claimant's conservative treatment, her physical examinations and her reported daily activities suggest that the claimant has maintained the ability to sustain a range of sedentary work. The claimant has complained of worsening back pain and a decreased tolerance for standing. The undersigned has accounted for this in limiting the claimant to a range of sedentary work allowing for change of position between sitting and standing every thirty minutes. The claimant's obesity has remained generally stable during the period at issue. At the hearing, the claimant testified that she weighed 208 pounds, which gives her a body mass index of 35.7 kg/m2 The records indicate that the claimant's weight has remained stable generally (Exhibit B7F-3). The claimant is not morbidly obese, but the additional weight combined with back pain and foot pain would make it difficult for her to climb ladders, ropes and scaffolds and engage in more than occasional postural activities, as included in the RFC finding.

(PageID.119). In addition the ALJ further explained how he determined that plaintiff could perform unskilled sedentary work with some limitations.

> In accordance with Social Security Ruling 96-6p, the undersigned has considered the administrative findings of fact made by State Agency medical physicians and other consultants. The opinions are weighed as statements from non-examining expert sources. On January 14, 2013, State medical consultant, Dr. Dale Blum opined that the claimant maintained the ability to sustain the limitations in the prior administrative law judge's finding (Exhibit B2A-12). Dr. Blum considered the claimant's complaints and the available evidence (Exhibit B2A-12). The undersigned gives significant weight to the opinion. The subsequent neurosurgery consultations suggested that the claimant did not need any surgical intervention (Exhibit B12F). The undersigned made some changes in the RFC finding herein, based on the evidence reflecting deterioration of the claimant's overall condition and per the claimant's testimony. On January 14, 2013, State psychological consultant, Dr. Joe DeLoach opined that the claimant retained the mental ability to perform simple and repetitive tasks (Exhibit B2A-13). Dr. DeLoach's opinions are consistent with the July 2013 mental status examination (Exhibit B13F). The undersigned added the off task limitation to accommodate the claimant's reported mental impairment symptoms, pain and fatigue. Based on the evidence, the undersigned concludes the State Agency adequately considered the evidence of record and significant weight is given to the opinions.

(PageID.120). "State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. App'x 412, 415 (6th Cir. 2004); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 n.4 (6th Cir. 2007) (quoting SSR 96-6P). Although, this issue presents a close question based solely on the objective medical evidence in the record, I cannot conclude that the ALJ erred in assessing plaintiff's credibility regarding her complaints of pain.

Plaintiff argues that the ALJ erred by finding that she did not meet the requirements of Listings 1.02 or 1.04. A finding that a claimant meets or equals a listing entitles a claimant to a presumption of disability. 20 C.F.R. § 416.920(a)(4)(iii) ("If you have an impairment that meets or equals one of the listings . . . we will find that you are disabled."). In general, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (noting that meeting only some requirements, no matter how severe, is not sufficient). For listing 1.02, plaintiff must show:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02; *see* 20 C.F.R. 1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 1526. The regulations define the ability to ambulate by example:

11

> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Plaintiff testified that she could walk one and a half blocks before she needed to stop due to hip pain. A November 26, 2013, physical examination revealed that plaintiff's gait was non-antalgic, without assistance, and that she could tandem gait, heel walk, and toe walk without difficulty. (PageID.470). There is no doubt that Plaintiff's ability to ambulate is affected by her medical condition, but that is not enough to meet the Listing. Plaintiff cannot point to medical evidence in the record that shows she is unable to ambulate. Plaintiff cannot meet each of the requirements of Listing 1.02 and therefore is considered under the regulations to ambulate effectively. Substantial evidence exists to support the ALJ's decision that plaintiff did not meet each of the requirements of Listing 1.02.

A review of the complete medical record establishes that the ALJ erred when considering whether plaintiff can meet the requirements of Listing 1.04B. Substantial evidence does not support the ALJ's conclusion that plaintiff does not suffer from a disabling medical condition. Plaintiff alleges that the ALJ improperly concluded that her degenerative disc disease did not satisfy the requirements under Listing 1.04B *Disorders of the Spine*. Listing 1.04B states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04; *see* 20 C.F.R. § 1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. 1526. Specifically, plaintiff correctly points out that she was diagnosed with arachnoiditis. The ALJ noted that medical findings were consistent with arachnoiditis, but that there was not a definitive diagnosis of arachnoiditis. However, the ALJ was not looking at the full MRI report when he made that finding. As the Commissioner now concedes, the September 10, 2012, MRI did confirm that plaintiff suffers with arachnoiditis. The Commissioner, nevertheless, argues in a conclusory manner that plaintiff cannot meet the other specific requirements of Listing 104B. To meet Listing 1.04B, plaintiff has to show that her spine disorder results in a compromise of a nerve root or the spinal cord in addition to a finding of spinal arachnoiditis by medically accepting imaging, manifested by severe burning or painful dysesthesia resulting in the need for changes in position or posture.

The ALJ relied in part upon a September 10, 2012, MRI scan of plaintiff's lumbar spine in concluding that plaintiff did not meet Listing 1.04B. The ALJ stated:

13

> The most significant findings were at the L5-S1 levels where there was severe disc degeneration at L5-S1 laminectomy (Exhibit B7-5). At the L4-5 level there was a moderate size focal disc herniation effacing the right thecal sac (Exhibit B7F-5). Although the radiology report suggested that the findings were consistent with arachnoiditis, they have not confirmed the diagnosis (Exhibit B7F-5). Physical examinations of the claimant revealed minimal discomfort while sitting and the claimant was able to change from sitting to standing without difficulty (Exhibit Bl0F-10). In addition, the claimant has been able to ambulate with a normal gait, and straight leg raise tests conducted in March 2013 have been negative (Exhibit Bl0F-10). In the claimant's cervical spine, there was evidence of degenerative disc disease at the CS-7 level (Exhibit B7F-6). Physical examinations of the claimant from March 2013 revealed normal range of motion in the neck and normal strength in the upper extremities (Exhibit Bl0F-10).

(PageID.115-116).

Plaintiff states that the ALJ was not looking at the full report when he made this finding. There exists multiple copies of the results of plaintiff's September 10, 2012, MRI in the medical records. (PageID.410, 417, 429, 442, 466,478). The copy that the ALJ relied upon included a finding that the "clumping of nerve roots inferiorly [is] consistent with arachnoiditis." (PageID.429-430). One other complete copy included under impression at number 4, "arachnoiditis." (PageID. 442-443). Plaintiff also points to other medical records where arachnoiditis is listed. (PageID.341, 433).

> The September 10, 2012, MRI revealed:
>
> MRI LUMBAR SPINE WI TH AND WITHOUT CONTRAST
>
> Multisequence, multiecho MR imaging of the lumbar spine performed before and after IV contrast enhancement. Comparison January 12, 2007.
>
> Normal vertebral body height. Low-grade retrolisthesis L4-5. Mild disk space narrowing L4-5 . Severe disk space narrowing L5-Sl with degenerative endplate change.
>
> Ll-2 mild disk bulging.

> L4-5 interval development moderate size focal right paracentral disk herniation effacing the right ventral thecal sac.
>
> L5-S1 status post left laminectomy. Mild enhancing extradural material in the posterior surgical bed consistent with postoperative granulation tissue formation similar to prior study. No evidence for recurrent disk herniation at the L5-S1 level. Mild bilateral neural foraminal stenosis is secondary to facet arthropathy and posterior osteophyte formation.
>
> Clumping of nerve roots inferiorly consistent with arachnoiditis. Conus medullaris satisfactory.
>
> *IMPRESSION*
>
> *1. Severe lumbar degenerative disease most prominent L5-S1.*
>
> *2. L4-5 interval development moderate size focal right paracentral disk herniation.*
>
> *3. L5-S1 status post left laminectomy with postoperative granulation tissue formation. Mild bilateral neural foraminal stenosis secondary to facet arthropathy and posterior osteophyte formation*
>
> *4. Arachnoiditis.*

(PageID.442-443). In addition, plaintiff's November 26, 2013, physical examination showed restriction in her spine with myofascial pain present. (PageID.470). "Cervical spine flexion shows mild instability c4-c7, low back DDD multiple levels." (PageID.471).

Plaintiff has established that she meets Listing 104B criteria. It is undisputed that plaintiff suffers with a disorder of the spine, severe degenerative disc disease, including a clumping of the nerve roots, with spinal arachnoiditis confirmed by the September 10, 2012, MRI, which the Commissioner concedes is appropriately acceptable medical imaging. Plaintiff has submitted testimony and medical evidence which confirms painful dysethesia, including the need to change positions each hour. Moreover, the ALJ found, in addressing functional capacity, that plaintiff needed to change from sitting to standing every one half hour. Plaintiff's physician Dr. Alshab reported on November 12, 2012, that "[t]he arachnoiditis in the lower lumbar spine will be quite

painful we can attempt to maximize her pain control with the arthritic issues first. But the arachnoiditis can be disabling . . ." (PageID.412). Plaintiff suffers with constant sharp, dull, electrical pain that worsens with movement and activity. (PageID.414). Dr. Aldridge found plaintiff "primarily disabled." (PageID.423). The ALJ erred by failing to conclude that the September 10, 2012, found arachnoiditis in plaintiff's spine. Substantial evidence does not support the finding of non-disability. Plaintiff's condition meets Listing 1.04B. Plaintiff is disabled under the Social Security Act, which entitles her to an award of benefits.

Accordingly, the decision of the Commissioner is REVERSED and the case is REMANDED for calculation and award of benefits.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 14, 2018